COURT OF CHANCERY
OF THE
STATE OF DELAWARE

Nathan A. Cook
Vice Chancellor

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

January 7, 2026

Elizabeth A. Sloan, Esquire
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801

Karine Sarkisian
KENNEDYS CMK LLP
222 Delaware Ave., Ste 710
Wilmington, DE 19801

RE: *Christopher D. Visnic, et al. v. Seegrid Corporation, et al.*,
C.A. No. 2022-0202-NAC

Dear Counsel:

This letter decision resolves the parties' requests for leave to move for summary judgment. For the following reasons, the parties' requests are denied.

## I. BACKGROUND

Plaintiffs are former employees of Defendant Seegrid Corporation ("Seegrid"), a company that develops, manufactures, and sells autonomous robots for use in the logistics sector as well as the software to operate those robots.[1] After exiting bankruptcy in 2015, Seegrid began granting certain employees, including Plaintiffs, stock options pursuant to a 2015 Stock Incentive Plan ("2015 Plan").[2] The 2015 Plan permitted Seegrid to repurchase shares awarded thereunder only upon an awardee's termination for cause.[3] At the time the parties entered the 2015 Plan, Seegrid

---

[1] *See* First Amended Verified Complaint ("FAC") ¶¶ 4, 33-35 (Dkt. 20).

[2] *See id.* ¶¶ 2, 4-5, 57-63.

[3] *See* FAC, Ex. B ("2015 Plan") § 10(b).

allegedly promised Plaintiffs that they could "hold any shares acquired through their option awards through and until a Change of Control transaction."[4] From 2015 through 2020, "to attract and retain talent," Seegrid regularly awarded key employees, including Plaintiffs, "lucrative stock option awards, in lieu of market-competitive salaries."[5]

In September 2016, Seegird amended the 2015 Plan ("2016 Plan", together with the 2015 Plan, "Plans"), allegedly without notifying participants including Plaintiffs.[6] Critically, the 2016 Plan gave Seegrid a "continuous" right to repurchase employee shares upon *any* separation from the company, at "Fair Market Value" as determined by Seegrid's board of directors.[7] In the years thereafter, Seegrid exercised that right and repurchased Plaintiffs', except for Phillips's, vested shares upon their departures from the company.[8] Regarding Phillips, Seegrid refused to fulfill her stock options after she quit, asserting she "lost her options by failing to exercise them prior to her last date of employment" per the 2016 Plan's revised terms.[9]

---

[4] FAC ¶¶ 239, 246, 261.

[5] *Id.* ¶¶ 2, 57, 62-63, 140. *See also id.* ¶¶ 64-116 (detailing each Plaintiff's participation in the 2015 Plan).

[6] *See id.* ¶¶ 6, 132-33.

[7] *Id.* ¶¶ 134-35; *see* FAC, Ex. C ("2016 Plan") § 10(a).

[8] *See* FAC ¶¶ 136-39, 141-208.

[9] *Id.* ¶¶ 203-08.

In this suit, Plaintiffs challenge Seegrid's actions concerning the Plans and the repurchase of stock options they received thereunder.[10] Plaintiffs' operative First Amended Complaint ("FAC") originally asserted seven causes of action.[11] On November 15, 2023, the Court granted in part Defendants' Motion to Dismiss the FAC.[12] Specifically, the Court dismissed: (1) both claims brought against the individual director Defendants;[13] (2) civil conspiracy and fraudulent misrepresentation claims asserted against Seegrid;[14] (3) Plaintiffs Visnic, Piening, Sudaric, and Phillips' breach of the 2015 Plan and implied covenant claims;[15] and (4) Plaintiff Sudaric's promissory estoppel claim.[16] As such, at the time of this opinion the live claims are as follows: (1) Count I – breach of the 2015 Plan asserted by Weiss and Merrell;[17] (2) Count II – breach of the 2016 Plan brought by all Plaintiffs;[18] (3)

---

[10] *See id.* ¶¶ 1-18.

[11] *See id.* ¶¶ 216-67. Plaintiffs' initial claims included two causes of action asserted against the individual Defendants, who served on Seegrid's Board of Directors during the relevant period. *See id.* ¶¶ 243-58.

[12] *See* Transcript pf 11-15-2023 Telephonic Bench Ruling on Defendants' Motion to Dismiss ("MTD Tr.") (Dkt. 51).

[13] *See id.* 39:9-43:21.

[14] *See id.* 41:11-46:5.

[15] *See id.* 46:6-16. The Court also dismissed Count II with regard to the same Plaintiffs "to the extent Count II seeks to assert a claim for breach of contract for improper amendment of the 2015 Plan[.]" *Id.* at 21:24-22:7.

[16] *See id.* 46:17-18.

[17] *See* FAC ¶¶ 216-20 (alleging "Seegrid breached the [2015] Plan by improperly amending the Plan and applying invalid and unconscionable terms to the [2015] Plan with the secret intention of forcing the repurchase of Plaintiffs' shares.").

[18] *See id.* ¶¶ 221-27 (alleging Seegrid breached the 2016 Plan by "(i) impairing stock options granted to Plaintiffs without their express written consent . . . , (ii) improperly applying the

Count III – breach of the implied covenant of good faith and fair dealing asserted by Weiss and Merrell;[19] and (4) Count IV – promissory estoppel brought by all Plaintiffs except Sudaric.[20] Trial on those remaining counts is scheduled for March 3-5, 2026.[21]

Through dueling letters, the parties' seek leave to move for summary judgment on all outstanding claims.[22] Plaintiffs seek leave to file a summary judgment motion on Counts I and II.[23] Plaintiffs argue summary judgment is warranted "on two independent theories of liability: (i) the Seegrid Board did not determine the fair-market-value [] repurchase price of Plaintiffs' Seegrid shares in good faith . . . ; and (ii) the Seegrid Board breached the 2015 Stock Incentive Plan [] by forcibly repurchasing the shares of Plaintiffs Weiss and Merrell."[24] "Seegrid does not oppose" Plaintiffs' request for leave to seek summary judgment concerning Counts I and II,

---

[] process for determining Valuation Date and Fair Market Value and forcing the repurchase of Plaintiffs' shares at a price substantially less than Fair Market Value, and (iii) failing to close on Seegrid's repurchase of Plaintiffs' shares within 120 days of providing Plaintiffs with notice of its intent to repurchase.").

[19] *See id.* ¶¶ 228-37 (claiming Seegrid breached the implied covenant "by improperly amending the [2015] Plan . . . engaging in an arbitrary and bad faith process for valuing and forcing the repurchase of Plaintiffs' shares . . . [and] for each of the Plaintiffs . . . initiat[ing] a buy back upon termination or separation despite Seegrid's repeated promises to the contrary[.]").

[20] *See id.* ¶¶ 238-42 (alleging Seegrid's promise that Plaintiffs "would be permitted to hold any shares acquired through their option awards through and until a Change of Control transaction" which included Plaintiffs to continue working at Seegrid).

[21] *See* Third Amended Case Schedule (Dkt. 155).

[22] *See* Defendant Seegrid's Letter to Vice Chancellor Requesting Leave to File for Summary Judgment ("Seegrid MSJ Request") (Dkt. 159); Letter to the Honorable Nathan A. Cook from Elizabeth A. Sloan requesting Summary Judgment ("Pls. MSJ Request") (Dkt. 161).

[23] *See* Pls. MSJ Request.

[24] *Id.* at 1.

""[b]ut Seegrid disagrees with Plaintiffs' application of the facts" insisting the record compels granting summary judgment in its favor.[25]  Seegrid requests leave to file summary judgment on all outstanding claims insisting "[t]here are no genuine disputes of material fact" and the undisputed record shows they are entitled to judgment on all counts.[26]  Plaintiffs oppose Seegrid's request in full.[27]

## II.    ANALYSIS

Summary judgment is only appropriate where there are no genuine issues of material fact, and the movant shows it is entitled to judgment as a matter of law.[28] When presented with such a motion, the Court views the evidence in the light most favorable to the nonmovant.[29]  As such, "[s]ummary judgment must be denied if there

---

[25] Response to Plaintiffs' Letter Requesting Leave to File for Summary Judgment ("Seegrid MSJ Opp'n") (Dkt. 163).  Specifically, Seegrid challenges Plaintiffs' characterization of the facts and insists Plaintiffs' "cherry-picked" documents do not justify entering summary judgment in Plaintiffs' favor on Counts I and II. *Id.*

[26] Seegrid MSJ Request.

[27] Letter to The Honorable Nathan A. Cook from Elizabeth A. Sloan in response to Seegrid's Request for Leave to File for Summary Judgment ("Pls. MSJ Opp'n") (Dkt. 162).

[28] *See In re Good Technology Corporation Stockholder Litigation*, 2017 WL 2537347, at *1 (Del. Ch. May 12, 2017).  Of course, Court of Chancery Rule 56(h) contemplates that "[w]here the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." Ct. Ch. R. 56(h).  Yet, that does not impact the analysis here as both Plaintiffs' and Seegrid's oppositions evidence that material facts remain in dispute. *See* Seegrid MSJ Opp'n; Pls. MSJ Opp'n.

[29] *See LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009).

is any reasonable hypothesis by which the opposing party may [prevail], or if there is

a dispute as to a material fact or inferences to be drawn therefrom."[30]

Recognizing the high threshold to prevail at summary judgment and the costs

such motions impose, the Court may deny leave to seek summary judgment "if it

decides upon a preliminary examination of the presented facts that it is desirable to

inquire into or develop more thoroughly the facts at trial in order to clarify the law or

its application."[31] That authority is rooted in the well-settled principle that "[t]here

is no right to summary judgment."[32]

Whether to allow the parties to file summary judgment motions is "a[] matter[]

of judicial discretion."[33] Generally, the Court permits summary judgment motions

where doing will promote "efficiency," for example by simplifying the issues or

potentially avoiding trial altogether.[34] Therefore, the Court "may decline to decide

the merits of the case in a summary adjudication where it is not reasonably certain

---

[30] *In re Good Technology*, 2017 WL 2537347, at *1. Even if no fact is disputed, the Court "may decline to grant summary judgment where a more thorough exploration of the facts is needed to properly apply the law to the circumstances." *In re XL Fleet (Pivotal) S'holder Litig.*, 2024 WL 3888738, at *1 (Del. Ch. Aug. 21, 2024) (internal quotes omitted).

[31] *In re Good Technology*, 2017 WL 2537347, at *1 (citing *Alexander Indus., Inc. v. Hill*, 211 A.2d 917 (Del. 1965)).

[32] *E.g.*, *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002). *See also Thomas v. American Midstream GP, LLC*, 2025 WL 53174, at *4 (Del. Ch. Jan. 9, 2025) (describing grant of leave to move for summary judgment as "an unusual procedure in Chancery practice[.]").

[33] *In re Fox Corporation Derivative Litigation*, 2025 WL 1220269, at *2 (Del. Ch. Apr. 28, 2025).

[34] *Thomas*, 2025 WL 53174, at *4; *see In re Fox*, 2025 WL 1220269, at *2 ("I am convinced that granting the Motion is the most efficient path forward here.").

that there is no triable issue."[35]  Additionally, the "[C]ourt has refused requests for leave to file motions for summary judgment where such proceedings are apt to waste, rather than conserve, the resources of the parties and the court."[36]  That is especially true when "trial and the attendant benefits of live witness testimony [is] around the corner[.]"[37]

Applying that standard here, I exercise my discretion to deny the parties' requests for leave to move for summary judgment.  The fact that Seegrid does not oppose Plaintiffs' request to seek summary on Counts' I and II does not require granting that request.[38]  That is especially true given that Plaintiffs oppose Seegrid's request to file a summary judgment motion concerning the same causes of action.[39]  Despite Seegrid's non-opposition, I conclude that material facts remain in dispute concerning the remaining causes of action such that permitting summary judgment motions would not produce efficiencies or obviate the need for trial.[40]

---

[35] *In re XL Fleet*, 2024 WL 3888738, at *1 (internal quotes omitted).

[36] *Id.*

[37] *Id.*

[38] *See, e.g.*, *EnVen Energy Corp. v. Dunwoody*, 2023 WL 3032857, at *1-2 (Del. Ch. Apr. 21, 2023).

[39] *See* Pls. MSJ Opp'n.

[40] *See In re Good Technology*, 2017 WL 2537347, at *2-5 (noting the court often denies leave to file summary judgment where an issue is "fact intensive and ill-suited for summary judgment.").

For example,[41] Seegrid argues concerning Count I that Weiss agreed to the 2016 Plan in his consulting agreement and similarly that Merrell consented to the allegedly breaching actions when she signed a joinder agreement.[42] Yet, Plaintiffs maintain "Merrell was coerced into signing a joinder agreement,"[43] and Weiss's "post-employment consulting agreement" did not amend the 2015 Plan and "is not analogous to the option grants signed by Plaintiffs Visnic, Sudaric, Piening, and Phillips."[44] Determining whether a contract was the product of coercion often requires resolving fact issues.[45] Additionally, given the unique facts of the case, whether Weiss consented to the 2016 Plan via his consulting agreement is the type

---

[41] The Court provides the examples discussed only to evidence the existence of material disputed facts that justify denying leave to file summary judgment. The listed examples are without limitation and are not intended to define the universe of disputed facts in advance of trial.

[42] *See* Seegrid MSJ Request at 2; Seegrid MSJ Opp'n at 4-5.

[43] Pls. MSJ Request at 4-5.

[44] Pls. MSJ Opp'n at 2-3 ("As Weiss testified, he never received nor was he aware of any amendments to the 2015 [] [] Plan.").

[45] *See Webb v. Dickerson*, 2002 WL 388121, at *6 (Del. Super. Mar. 11, 2002) ("There is also a genuine issue of material fact as to whether Webb was unduly or unfairly influenced whether he was under duress, and whether he was coerced."); *Brazen v. Bell Atlantic Corp.*, 1997 WL 153810, at *5 (Del. Ch. Mar. 19, 1997) ("Whether coercion is inequitable depends on the particular facts and circumstances of the case."). *But see Patrick v. Ellis*, 2013 WL 5800908, *6-7 (Del. Super. Oct. 18, 2013) (holding plaintiff "failed to carry his burden and has not established that there is a genuine issue of fact that would support this Court concluding that he was subjected to duress or coercion."). Plaintiffs also argue Merrell's joinder agreement lacked consideration and, where genuinely disputed, whether a contract was supported by consideration involves a question of fact. *See Blagg v. HB2 Alternative Holdings, LLC*, 2024 WL 3836715, (Del. Super. Nov. 20, 2024) ("There remains a genuine issue of fact [] regarding whether consideration supported" the at-issue contract); *Seiden v. Kaneko*, 2017 WL 1093937 (Del. Ch. Mar. 22, 2017) ("[W]hether a contract is supported by adequate consideration is a mixed question of law and fact.").

of issue that would benefit from further fact development at trial, namely Weiss's testimony.[46]

Regarding Count II, the parties agree liability rests on a finding that Seegrid's board of directors acted with subjective, contractual bad faith when determining the fair market value of Plaintiffs' shares under the 2016 Plan.[47] The parties both raise numerous factual arguments supported by evidence concerning whether the record shows Seegrid's board of directors acted with the requisite subjective bad faith.[48]

---

[46] Plaintiffs point out that "Weiss testified, he never received nor was he aware of any amendments to the 2015 Stock Incentive Plan." Pls. MSJ Opp'n at 3. Seegrid's request asks the Court to disregard Weiss's testimony, a credibility issue best resolved after trial. *See GXP Capital, LLC v. Argonaut Manufacturing Services, Inc.*, 253 A.3d 93, 104 n.51 (Del. 2021) ("the best test of credibility of witnesses requires their appearance before the trier of fact." (internal quotes omitted)). Additionally, Plaintiffs assert Weiss's consulting agreement did not properly amend the 2015 Plan. Pls. MSJ Opp'n at 3. Resolving that argument requires determining how the two agreements interrelate. *See AYANA Consult EOOD v. Whitehat Education Technology LLC*, 2023 WL 7823136, at *3 (Del. Super. Nov. 14, 2023) ("[T]he interplay of factual issues, contract interpretation, and questions of law . . . warrants a fuller record to properly resolve.").

[47] Seegrid MSJ Request at 2-3 ("Plaintiffs must point to some evidence from which the court reasonably could infer subjective bad faith" (cleaned up)); Pls. MSJ Opp'n at 3 ("Defendant does not dispute that the Board must determine FMV in good faith, nor that the Board's subjective belief is determinative of bad faith."); Pls. MSJ Request at 1-2 ("Delaware law asks whether the directors subjectively believed the valuation they invoked." (citing *Fox v. CDX Holdings, Inc.*, 2015 WL 4571398, at *25 (Del. Ch. July 28, 2015)). Seegrid MSJ Opp'n at 1 (recognizing the subjective bad faith standard applies).

[48] *See* Seegrid MSJ Request at 2-5 (arguing Seegrid's Board of Director's reliance on a 409A valuation defeats any allegations of subjective bad faith); Pls. MSJ Opp'n at 3-5 (asserting Seegrid's "reliance upon its engagement of a valuation firm [] [] is misplaced" because it provided skewed inputs for the sole purpose of depressing the value of the repurchased employee shares); Pls. MSJ Request at 1-4 (arguing the evidence shows: (1) Seegrid's "board and senior executives repeatedly represented the [fair market value] as $6.76"; (2) "Seegrid used $6.76 per-share valuation in a contemporaneous third-party acquisition"; and (3) "Seegrid manipulated the 409A process by providing depressed forecasts and withholding material information."); Seegrid MSJ Opp'n at 1-4 (insisting Plaintiffs' "cherry-picked set of documents" do not show the Board believed fair market value was $6.76 and that Seegrid did not "manipulate[] the 409A process by providing [] [] depressed and 'engineered' forecasts[.]").

Thus, the parties' arguments show that whether Seegrid's board of directors valued Plaintiffs' stock in subjective bad faith is a triable issue of fact that cannot be resolved at summary judgment.[49]

Turning to Count III, Seegrid argues granting leave to file summary judgment is proper because: (1) there is no evidence from which the Court can infer the board of director's subjective, contractual bad faith; and (2) "Plaintiffs failed to articulate recovery pursuant to Count III distinct from Count II."[50] The first mirrors Seegrid's position concerning Count II and fails for the same reason – namely, determining whether Seegrid's board of directors acted with subjective bad faith requires resolving material factual disputes which is improper at summary judgment. Seegird's second argument fares no better. Seegrid made, and the Court rejected, a similar argument at the motion to dismiss stage.[51] Yet, reevaluating Seegrid's argument concerning the overlap between Counts II and III with fresh eyes does not show summary judgment is proper. It is axiomatic that based on the same underlying facts "[p]arties

---

[49] *See Aureus Holdings, LLC v. Kubient, Inc.*, 2021 WL 3891733, at *6 (Del. Super. Aug. 31, 2021 (holding in the context of determining whether a party complied with a contractual good faith negotiation requirement that "[d]etermining whether a party acts in bad faith generally is fact-specific and requires a contextual inquiry into what the parties knew and understood." (citing *CNL-AB LLC*, 2011 WL 353529, at *9 (Del. Ch. Jan. 28, 2011))); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube LLC*, 2025 WL 2218859, at *2 (Del. Ch. Aug. 5, 2025) (concluding that "[t]rial is needed to resolve" whether a party acted with wrongful intent).

[50] Seegrid MSJ Request at 2-5.

[51] *See* MTD Tr. 25:22-31:19.

can [] [] bring alternative claims and proffer alternative theories to support the relief requested."[52]

Finally, permitting summary judgment on Count IV is not likely to simplify this case. Seegrid requests leave to file summary judgment because "Plaintiffs proffer only self-serving claims that [the alleged] promises were made[.]"[53] That argument asks the Court to reject Plaintiffs' testimony to the contrary and thus invokes their credibility. Of course, "[d]etermining credibility of witnesses is a matter for the fact-finder" aided by the complete record with the benefit of live testimony.[54] Similarly, Seegird asserts summary judgment on Count IV is warranted because Merrell, Visnic and Piening executed documents after their employment that supersede the alleged prior promise.[55] Yet, as with Count I, Plaintiffs maintain those agreements lacked consideration[56] and were the product of coercion.[57] As discussed above, determining whether Plaintiffs are correct requires resolving material factual disputes.

---

[52] *E.g.*, *Christiana Realty Associates, LLC v. Christiana Town Center, LLC*, 2024 WL 2753330, at *5 n.38 (Del. Ch. May. 30, 2024) (citing Ch. Ct. r. 8(e)(2)). Of course, Plaintiffs will not be allowed to double recover for the same harm, but that does not preclude them from advancing alternative claims based on the same facts.

[53] Seegrid MSJ Request at 1.

[54] *Williams v. White Oak Builders*, 913 A.2d 571, at *1 (Del. 2006) (Table).

[55] Seegrid MSJ Request at 1-2.

[56] Plaintiffs MSJ Opp'n at 1-2 (citing *James J. Gory Mech. Contr., Inc. v. BPG Residential Partners V, LLC*, 2011 WL 6935279 (Dec. 30, 2011) ("a promise to fulfill a pre-existing duty . . . cannot support a binding contract because consideration for the promise is lacking." (cleaned up))).

[57] *Id.* at 2.

The above examples show that the parties dispute material facts relevant to each of the live claims such that permitting summary judgment briefing would needlessly waste the parties' as well as the Court's resources. The nearness of trial confirms that conclusion. Trial is less than two months away. Given that, for the reasons discussed, summary judgment seems unlikely to obviate the need for further proceedings it is a better use of judicial resources to proceed directly to trial where the Court can hear all the evidence and decide all outstanding issues. Thus, permitting summary judgment would not promote an efficient resolution of the parties' dispute. Therefore, I exercise my discretion to deny the parties' request for leave to file summary judgment.

### III.    CONCLUSION

For the foregoing reasons, the parties' requests for leave to file summary judgment is denied.

Sincerely,

/s/ *Nathan A. Cook*

Vice Chancellor